942 A.2d 21 (2008)
398 N.J. Super. 299
CAPITAL FINANCE COMPANY OF DELAWARE VALLEY, INC., Plaintiff-Respondent/Cross-Appellant,
v.
Maureen Bell ASTERBADI, Defendant-Appellant/Cross-Defendant-Appellant/Cross-Respondent, and
PNC Bank and Botool M. Hilni, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 2007.
Decided February 19, 2008.
*23 William F. Ziegler, Woodbury, argued the cause for Appellant/Cross-Respondent (Holston, MacDonald, Uzdavinis, Eastlack, Ziegler & Lodge, attorneys; Mr. Ziegler and Samuel J. Myles, on the brief).
Anne S. Cantwell argued the cause for Respondent/Cross-Appellant (Dembo & Saldutti, attorneys; Ms. Cantwell, Leon D. Dembo, and William F. Saldutti, III, Cherry Hill, on the brief).
Before Judges S.L. REISNER, GILROY and BAXTER.
The opinion of the court was delivered by
GILROY, J.A.D.
Defendant Maureen Bell Asterbadi[1] appeals from that part of the order of the Chancery Division of May 5, 2006, which denied her request that plaintiff Capital Finance Company of Delaware Valley, Inc., the purchaser at an execution sale of her surviving husband's interest in a single-family residence located at Two 111th Street, Stone Harbor (the Property), account for principal and interest paid on the Property's first mortgage. Defendant also appeals from the order of October 17, 2006, denying her motion for reconsideration, and from the consent judgment of August 7, 2006, confirming the trial court's prior rulings and preserving the parties' rights to appeal therefrom. Plaintiff cross-appeals from that part of the order of March 16, 2006, denying its request for partition of the Property and from the consent judgment of August 7, 2006, as it confirmed that part of the prior order of March 16, 2006. We affirm in part and reverse in part.

I.
The procedural history and statement of facts are contained in the trial court's reported decision, Capital Fin. Co. v. Asterbadi, 389 N.J.Super. 219, 912 A.2d 191 (Ch.Div.2006). However, the following *24 summary will place this appeal in context. On August 17, 1993, defendant and her husband, Nabil J. Asterbadi, acquired title to the Property by a sheriffs deed, following a foreclosure action brought by a second mortgagee. The Property was purchased for $208,000, subject to the first mortgage lien of Chemical Bank of New Jersey in the amount of $450,000. Although the Asterbadis were married at the time of the purchase, the sheriff's deed did not state that the conveyance was made to them as husband and wife.
On November 18, 1993, the Asterbadis obtained a mortgage loan from Chemical Bank in the amount of $526,400, secured by a mortgage lien on the Property. The proceeds of the loan were used to satisfy the original first mortgage of Chemical Bank in the amount of $450,000; pay part of the balance due to the sheriff in the amount of $179,771.65; and pay the loan closing charges of $22,332.39. In addition to the monies borrowed from Chemical Bank, the Asterbadis contributed $85,704.04 towards the balance due to the sheriff.[2]
In the interim, on October 4, 1993, CIT Group Equipment/Financing, Inc., obtained a judgment in the United States District Court for the Eastern District of Virginia against Nabil J. Asterbadi only in the amount of $2,286,009.97. On August 19, 2003, the judgment was docketed with the Clerk of the Superior Court of New Jersey. On May 18, 2005, the Sheriff of Cape May County, pursuant to a writ of execution, exposed for sale Nabil's interest in the Property. Plaintiff purchased Nabil's interest in the Property at the sheriff s sale for the sum of $551,100, subject to other interests of record, including defendant's ownership interest; the first mortgage lien of Washington Mutual Bank, the successor in interest to Chemical Bank; and the second mortgage held by Batool Hilni.[3]
On July 20, 2005, plaintiff notified defendant that it had acquired her husband's interest in the Property, demanded an inspection of the Property, as well as an accounting of the Property's income and expenses. On August 26, 2005, plaintiff filed a complaint seeking a partition by sale of the Property, an accounting, and an appointment of a rent receiver. The parties moved to resolve the issues raised in the complaint on cross-motions for summary judgment.
On February 24, 2006, the trial judge issued a written opinion in which he: 1) determined that defendant and her husband had acquired title to the Property as tenants by the entirety, and plaintiff's acquisition of defendant's husband's interest does not impair defendant's right of survivorship; 2) determined that plaintiff and defendant possessed title to the Property as tenants in common with a right of survivorship, measured against the lives of defendant and her husband; 3) denied plaintiffs application for partition of the Property; 4) granted plaintiff's application for an accounting of defendant's possession *25 of the Property from July 20, 2005; 5) directed plaintiff and defendant to establish a fair rental value for the Property to determine the basis of defendant's financial responsibilities to plaintiff; 6) directed plaintiff to account to defendant for payments of real estate taxes, municipal assessments, if any, and insurance premiums on the Property; and 7) granted plaintiffs request for inspections of the Property on reasonable notice to defendant. Id. at 230-34, 912 A.2d 191. A confirming order was entered on March 16, 2006.
Remaining unresolved were issues concerning the parties' responsibilities for payments made on the first and second mortgages. On April 21, 2006, the trial judge rendered an oral decision addressing these open issues. The judge denied defendant's request that plaintiff account for payments made on the first mortgage, then held by Washington Mutual Bank, concluding that defendant could seek contribution for one-half of those payments from her husband. As to the second mortgage held by Hilni, the judge determined that both parties were equally obligated on that mortgage and directed that plaintiff account to defendant for any monies paid against that mortgage. In reaching his decision, the trial judge stated in relevant part:
With respect to the first mortgage, both Mr. and Mrs. Asterbadi are individual obligors. As between the plaintiff . . . and Mrs. Asterbadi, she is responsible as far as I am concerned for any and all costs attendant to the satisfaction of and maintaining that mortgage. . . .
. . . .
[M]r. and Mrs. Asterbadi acquired the property presumably for cash because there's no purchase money mortgage . . . attendant to it, and if there was originally a mortgage, it has since been satisfied by their equity.
So they are sitting there with all of the equity in the property and they then take a mortgage, which is now the first mortgage, and they take that mortgage and receive the equity from it[,] impairing their equity in the property to that extent. That is, Mr. and Mrs. Asterbadi collectively. I have no way of knowing and it's not before me today, what the respective rights and obligations as between the two of them may be.
In any event prior to the acquisition of the interest by the plaintiff here, they . . . have the equity in the property that is represented by the lien of that mortgage. They've had that. They've had the use of it. It is theirs. It is, therefore, in my view fundamentally unfair to impose upon the plaintiff in this action, who . . ., while standing in the shoes of Mr. Asterbadi[,] is a separate party, the responsibility to account for the repayment of that equity when that property belonged and is held by Mr. and Mrs. Asterbadi.
Concerning the second mortgage, the judge stated:
[N]either the plaintiff nor Mrs. Asterbadi is individually an obligor. The mortgage is a lien against the equity of both of them. Neither has any affirmative obligation to anybody or to each other to pay anything to satisfy the mortgage. The mortgage, however, impairs the equity of each of them in the property and to the extent that anybody at any point undertakes to enforce that mortgage and does so successfully, any burden of that enforcement will be born by the parties together.
A confirming order was entered on May 5, 2006. On June 16, 2006, the court denied defendant's motion for reconsideration. For reasons not clear in the record, a confirming order was not entered until October 17, 2006. In the interim, the parties *26 resolved all other outstanding issues. On August 7, 2006, a consent judgment was entered that incorporated the court's prior orders and reserved unto the parties the right to appeal from the trial court's prior orders.
On appeal, defendant argues:
POINT I.
THE TRIAL COURT ERRED IN FAILING TO FIND THAT A CO[ ]TENANT MUST, AS A MATTER OF LAW, ACCOUNT TO A FELLOW CO[ ]TENANT FOR MORTGAGE INTEREST AND PRINCIPAL PAYMENTS.
POINT II.
THE TRIAL COURT ERRED AS IT BASED ITS DECISION UPON INCORRECT FACTS WHICH IT "PRESUMED" WERE TRUE.
On its cross-appeal, plaintiff argues:
POINT I.
CAPITAL FINANCE IS ENTITLED TO AN ORDER FOR PARTITION BY SALE OF THE REAL PROPERTY.
POINT II.
IF THIS COURT DETERMINES TO UPHOLD THE TRIAL COURT'S ORDER DENYING PARTITION AND ORDERING THE DEFENDANT TO ACCOUNT, THEN THERE IS NO BASIS TO REVERSE THE COURT'S DETERMINATIONS OF THE REQUIREMENTS OF THE ACCOUNT.
POINT III.
THERE IS NO BASIS TO SUPPORT DEFENDANT'S ARGUMENT THAT THE TRIAL COURT'S FINDINGS OF FACT SHOULD BE REVERSED.

II.
We begin by addressing plaintiff's cross-appeal. Plaintiff argues that the trial court erred in determining that defendant and her husband acquired the Property as tenants by the entirety. Plaintiff contends that the trial court's denial of its request for a partition was not in accord with established precedent, "establishing that the right [to partition] is to be liberally afforded, except in compelling circumstances." Plaintiff contends that the Property is not suitable for division between the parties "by metes and bounds method, and that partition by sale is thus the appropriate remedy." Defendant counters that the trial court correctly found that she and her husband acquired title as tenants by the entirety because the record is devoid of any evidence establishing otherwise. Defendant contends that the trial court correctly determined that the parties presently hold title as tenants in common with right of survivorship as measured against the lives of herself and her husband. Lastly, defendant asserts that the court properly exercised its discretion, denying plaintiffs request for a partition, because there were other equitable remedies available to plaintiff.
We have considered plaintiffs arguments in light of the record and applicable law, and are not persuaded by any of them. We conclude that the trial judge correctly determined that defendant and her husband acquired title as tenants by the entirety; that plaintiff holds title to the Property with defendant as tenants in common as measured by the lives of defendant and her husband; and plaintiff was not entitled as of right to a partition of the Property. We affirm on the issues appealed by plaintiff for the reasons cogently stated by the trial judge, id. at 225-34, 912 A.2d 191. R. 2:11-3(e)(1)(A).

III.
We now address defendant's appeal. Defendant argues that the trial court erred in denying her request that plaintiff *27 account for one-half of the principal and interest that she has paid on the first mortgage of Washington Mutual Bank. Defendant contends that the court mistakenly presumed that the November 18, 1993, mortgage loan in the amount of $526,400 that had been obtained from Chemical Bank, was a mortgage refinance loan with defendant and her husband taking out equity from the Property, rather than a purchase money mortgage loan.[4] Defendant contends that although she had not presented the court with a copy of the Uniform HUD-1 loan closing statement on her original motion for summary judgment, showing the disbursement of the loan proceeds, she did present a copy of the closing statement in support of her motion for reconsideration, together with her husband's certification confirming that the loan proceeds were used only for the purposes of paying off the pre-existing first mortgage, and paying the purchase monies owed to the sheriff.
Motions for reconsideration are governed by Rule 4:49-2. Reconsideration is a matter to be exercised in the trial court's sound discretion. Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 257, 531 A.2d 1078 (App.Div.1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988). "A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." D'Atria v. D'Atria, 242 N.J.Super. 392, 401, 576 A.2d 957 (Ch.Div.1990). "Reconsideration should be utilized only for those cases . . . that fall within that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid.
Reconsideration cannot be used to expand the record and reargue a motion. Reconsideration is only to point out "the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." R. 4:49-2. A motion for reconsideration is designed to seek review of an order based on the evidence before the court on the initial motion, R. 1:7-4, not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record. Cummings v. Bahr, 295 N.J.Super. 374, 384, 685 A.2d 60 (App.Div.1996).
We are satisfied on the motion for reconsideration, that the trial judge mistakenly exercised his discretion by not considering defendant's husband's certification and the attached copy of the closing statement from the November 18, 1993, Chemical Bank mortgage loan. Although the documents could have been presented at the original argument, the issue of whether the first mortgage was a purchase money loan or a refinance loan, and whether the difference would have affected the outcome, was neither raised nor argued. Defendant presented the additional evidence on the motion for reconsideration in furtherance of her argument that the judge had expressed his decision on an incorrect basis.
The evidence dovetailed and amplified the evidence already in the record, via the affidavit of consideration attached to the sheriffs deed, indicating that plaintiff had purchased the Property, subject to a first mortgage lien of $450,000. The newly-submitted evidence, if considered, would have led the trial judge to conclude that *28 defendant and her husband used the Chemical Bank loan to preserve the Property, rather than to take equity out of the Property. We next consider the legal significance of that conclusion.
When a court denies partition to a creditor that has acquired the property interest of a debtor spouse, the creditor is entitled to the alternative equitable remedy of an accounting from his or her cotenant, the non-debtor spouse. Newman v. Chase, 70 N.J. 254, 266, 359 A.2d 474 (1976). A cotenant who has paid operating and maintenance expenses of the property is entitled to an accounting for a pro-rata share from the other cotenants, regardless of who is in possession. Esteves v. Esteves, 341 N.J.Super. 197, 201-02, 775 A.2d 163 (App.Div.2001). Operating and maintenance expenses include, but are not limited to, charges such as taxes, mortgage, interest, and necessary repairs essential to the maintenance of the capital value of the property. Baird v. Moore, 50 N.J.Super. 156, 169, 141 A.2d 324 (App.Div.1958). "[O]n principle, the mere fact of possession by the cotenant making advances for the benefit of the common estate should not preclude reimbursement by contribution from the cotenants sharing in the benefits by the preservation of the common property." Id. at 165-66, 141 A.2d 324.
Generally, the cotenant in possession of property does not have to account to other cotenants for the use and possession of the property because all tenants in common "have a right to occupy, all of the property and if one chooses not to do so, that does not give him [or her] the right to impose an `occupancy' charge on the other." Esteves, supra, 341 N.J.Super. at 202, 775 A.2d 163. However, when a cotenant "who ha[s] been in sole possession of the property demands contribution toward operating and maintenance expenses from his co-owner, fairness and equity dictate that the one seeking that contribution allow a corresponding credit for the value of his [or her] sole occupancy of the premises." Ibid.
Where, however, "possession by one tenant [is] accompanied by an ouster or exclusion of a [cotenant]," the excluded cotenant may recover the reasonable rental value of the portion of the property so occupied. Lohmann v. Lohmann, 50 N.J.Super. 37, 68, 141 A.2d 84 (App.Div. 1958), (Haneman, J.A.D., concurring in part and dissenting in part), certif denied, 31 N.J. 187, 155 A.2d 803 (1959). Generally, an ouster requires "more than an occupation by one tenant and a failure or forbearance to occupy by the [cotenant]." Ibid. An ouster may be actual or constructive. A constructive ouster occurs when a cotenant takes possession of property that is not susceptible to joint occupancy. Ibid. When there has been an "ouster but the ousted cotenant receives an accounting based on the value of the use and occupation by the cotenant in possession, equity requires that appropriate payments made by the cotenant in possession be credited in calculating what is due [to] the cotenant out of possession." Newman, supra, 70 N.J. at 267, 359 A.2d 474.
Applying these principles, we determine that, like the second mortgage, plaintiff is obligated to account to defendant for principal and interest paid on the first mortgage. When plaintiff bought the husband's interest at the sheriff's sale, plaintiff became a cotenant with defendant, the non-debtor spouse. Defendant continues to remain in possession of the Property, and that conduct, as correctly determined by the trial judge, equates to an ouster of plaintiff because the Property is not susceptible to being occupied by both parties jointly. Accordingly, defendant is accountable for one-half of the imputed *29 rental value of the Property, subject, however, to an offset for any payments made to preserve the Property, including payments made on both mortgages, as well as taxes, insurance, and repairs. Ibid. There is nothing unjust in obligating plaintiff to pay its proportionate share of the first mortgage payments, because it was aware of that mortgage, either actually or constructively, when plaintiff purchased the Property at the sheriff's sale. Any monies paid against the mortgage proportionally benefit plaintiff by increasing the equity in the Property should the Property be sold, or should plaintiff survive defendant and her husband. Moreover, failure to pay either mortgage would impair both parties' title, subjecting the Property to a possible foreclosure sale.
We affirm the order of March 16, 2006. We reverse that part of the order of May 5, 2006, which denied defendant's request that plaintiff account for payments made by defendant against the principal and interest of the first mortgage held by Washington Mutual Bank. We also reverse the order of October 17, 2006, which denied defendant's motion for reconsideration. We affirm all other provisions of the May 5, 2006, and August 17, 2006, orders. We remand the matter to the trial court to enter an amended order of judgment in accordance with this opinion.
Affirmed in part; reversed in part; and remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] Because the two other defendants, PNC Bank and Botool M. Hilni, are not directly involved in this appeal, the term "defendant" shall only refer to Maureen Bell Asterbadi.
[2] The breakdown of the loan closing proceeds is contained in a certification of Nabil J. Asterbadi that was not before the trial court on the original cross-motions for summary judgment but was submitted to the court on defendant's motion for reconsideration.
[3] The November 18, 1993, mortgage in the amount of $450,000 held by Chemical Bank was subsequently transferred to PNC Bank, a named defendant, and then to Washington Mutual Bank. The Hilni mortgage, dated February 18, 1997, resulted from a judgment entered against Nabil J. Asterbadi on April 19, 1996, in favor of Scope Leasing, Inc., in the amount of $381,608.30. The judgment was subsequently assigned to Hilni who resolved the issue of collection on the judgment, by accepting a second mortgage on the Property executed by defendant and her husband.
[4] This finding was significant because, if defendant and her husband had taken out the Chemical Bank loan for their own economic benefit, rather than to preserve the Property, defendant could not have claimed credit from plaintiff for her mortgage payments.