**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4671-18T2

AWILDA TORRES,

    Plaintiff-Respondent,

v.

JOSEPH MBOGO,

    Defendant-Appellant.

_____

        Submitted September 14, 2020 – Decided October 16, 2020

        Before Judges Sabatino and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. SC-0632-19.

        Joseph Mbogo, appellant pro se.

        Awilda Torres, respondent pro se.

PER CURIAM

    Defendant Joseph Mbogo appeals from the May 1, 2019 judgment of the Special Civil Part awarding plaintiff Awilda Torres $1992 in this residential lease dispute, as well as the June 5, 2019 order denying his motion for

reconsideration. We affirm the judgment and order in part and remand for further proceedings.

## I.

The following facts are derived from the record. Plaintiff leased a house in Camden for a one-year term beginning on December 1, 2018. The lease defines the landlord as "PennBridge Management, LLC, Agent for Owner" (PennBridge) and states that PennBridge is "the manager of the property and authorized to act for and on behalf of the Landlord for . . . all . . . acts which [the] Landlord could or would do if personally present." The owner of the property is not identified in the lease, which is signed on behalf of the landlord with the handwritten statement "PennBridge Management, LLC." According to plaintiff, defendant negotiated and signed the lease.

Plaintiff moved into the house on December 1, 2018. She gave defendant several checks payable to PennBridge which together constituted $975 for December's rent and $975 as her security deposit. After a few weeks, plaintiff informed defendant she was terminating the lease because of a number of issues she claimed made the house uninhabitable, including the presence of carbon monoxide and insufficient heat. She vacated the premises before the end of the month and made no further rent payments.

A-4671-18T2

Defendant agreed to allow plaintiff to arrange for a new tenant to assume the remainder of her lease. The new tenant moved into the house on February 1, 2019. Defendant subsequently refused plaintiff's request to return her security deposit, applying it instead to the January 2019 rent.

Plaintiff filed a complaint in the Special Civil Part seeking the return of her security deposit. She named Mbogo as the only defendant.

At trial, Mbogo did not object to having been named as defendant in the complaint. In addition, he admitted ownership of the leased premises in the following exchange with the court:

> THE COURT: Mr. Mbogo, . . . what is your relationship with . . . Penn[B]ridge Management?
>
> DEFENDANT: So, I own the property through my LLC [(limited liability company)].
>
> THE COURT: You're the owner?
>
> DEFENDANT: Yeah.

The court thereafter found defendant was appearing on "behalf of his company, Penn[B]ridge Management." Defendant did not object to that finding.

The court found plaintiff proved she discovered defects during the first weeks of her occupancy that rendered the house uninhabitable and that her decision to vacate the premises and cancel the lease was justified. In addition,

3

the court noted that a Camden ordinance provides that before any premises may be leased for use as a residence, "it shall be the duty of the landlord to obtain a certificate of rental approval" from municipal officials. Camden N.J. Code, § 620-37 (2020). Defendant admitted the landlord did not obtain a certificate of rental approval prior to leasing the house to plaintiff. As a result of this admission, the court concluded "Penn[B]ridge Management, Mr. Mbogo's company, could not rent the place" to plaintiff.

The court found the lease to be unenforceable and ordered defendant to return to plaintiff both the $975 for December 2018 rent and her $975 security deposit. The court also awarded plaintiff $42 in costs. On May 1, 2019, the court entered a judgment against defendant for $1992.

Defendant subsequently moved for reconsideration. He argued the court erred when it nullified the lease because it is the practice in Camden for municipal officials to inspect rented homes for purposes of a certificate of rental approval during the first month of the tenant's occupancy. The court rejected this argument, finding defendant produced no evidence in support of his claim.

In addition, defendant argued the court erred by entering judgment against him personally. According to defendant, PennBridge is the lessor of the house and should, therefore, have been named as the defendant in plaintiff's complaint.

He claimed that he misspoke at trial when he said he owned the property through his limited liability company, as he was only the manager of PennBridge.

A certificate of formation attached to defendant's moving papers indicates PennBridge has two members: Tristate Partners, LLC (Tristate) and Lydia W. Mathenge. Defendant signed the certification of formation as an "Authorized Person." The record contains no evidence of what, if any, interest defendant has in Tristate.

The court, relying on defendant's admission at trial that he owned the property through his limited liability company, denied the motion. A June 5, 2019 order memorializes the court's decision.

This appeal followed. Before us, defendant repeats the arguments raised in his motion for reconsideration.

## II.

Our scope of review of the judge's findings in this nonjury trial is limited. We must defer to the judge's factual determinations, so long as they are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). This court's "[a]ppellate review does not consist of weighing evidence anew and making independent factual findings; rather, our function is to determine whether there

5

is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

In addition, Rule 4:49-2 provides:

> Except as otherwise provided by R. 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall . . . state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

A party may move for reconsideration of a court's decision pursuant to Rule 4:49-2, on the grounds that (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence," or (3) the moving party is presenting "new or additional information . . . which it could not have provided on the first application . . . ." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). The moving party must "initially demonstrate that the [c]ourt acted in

6

an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401.

Reconsideration is not an opportunity to "expand the record and reargue a motion. [It] is designed to seek review of an order based on the evidence before the court on the initial motion, . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the . . . record. " Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). "A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (quoting Guido v. Duane Morris, LLP, 202 N.J. 79, 87 (2010)).

Having carefully reviewed the record, we agree with the trial court's conclusion that PennBridge's failure to obtain a certificate of rental approval justified nullification of the lease, the award to plaintiff of the December 2018 rent, and the return of her security deposit. As we have explained,

> a lease is not automatically void simply because the landlord failed to obtain an occupancy permit; other factors bear equitably on the problem. Those factors include consideration of the public policy underlying the law that has been contravened, whether voiding the lease will actually further that policy, the burden or detriment to the respective parties if the lease is voided, and the benefit which the party seeking to avoid the bargain has enjoyed.

A-4671-18T2

[McQueen v. Brown, 342 N.J. Super. 120, 128 (App. Div. 2001) (citations omitted).]

Permitting a tenant to live rent free in a home in the absence of evidence of habitability defects merely because of a failure to obtain a certificate of rental approval would constitute "an impermissible forfeiture on the landlord and give[] the tenant[] an unjustifiable windfall." Id. at 130.

Here, however, the trial court found plaintiff established the premises were uninhabitable because of the presence of carbon monoxide and inadequate heat. Nullifying the lease did not, therefore, result in a windfall to plaintiff, who justifiably vacated the premises before the end of the first month of the lease. Nor does the award to plaintiff of one month's rent and the return of her security deposit visit on the landlord an impermissible forfeiture. The burden on the landlord is slight; the benefit to plaintiff is justified by the facts.

In addition, the defects that rendered the house uninhabitable are precisely the type of conditions an inspection for a certificate of rental approval would be intended to detect. Voiding the lease furthers the public purpose of the ordinance by encouraging landlords to secure necessary approvals before permitting a tenant to occupy residential premises with habitability defects.

We cannot, however, identify in the record the basis for the trial court's entry of judgment against defendant. It is undisputed that defendant was not a

party to the lease. PennBridge is designated in the lease as the landlord and the agent for the property owner. Plaintiff's rent and security deposit checks were payable to PennBridge.

Defendant's relationship to PennBridge is not clear from the record. As noted above, there are two members of the limited liability company: Tristate and a non-party. Defendant's signature as authorized agent on the certificate of formation for PennBridge suggests he may have an ownership interest in Tristate and, through Tristate, in PennBridge. In his motion for reconsideration, however, he states that he is only the manager of PennBridge.

As a general rule, the debts, obligations, and liabilities of a limited liability company are not the debts, obligations, and liabilities of its members or managers. N.J.S.A. 42:2C-30(a). Personal liability for a member or manager of a limited liability company can be established only where extraordinary circumstances, such as fraud or injustice, warrant piercing the corporate veil. See State, Dept. of Envt'l Protection v. Ventron Corp., 94 N.J. 473, 500 (1983).

We remand the matter for clarification of the trial court decision with respect to entering judgment against defendant. If, as suggested by the record, the trial court concluded defendant appeared at trial on behalf of PennBridge, as its member, manager, or agent, entry of judgment against defendant was not

warranted. In those circumstances, the appropriate course of action would be for the trial court to amend the pleadings to name PennBridge as the only defendant and to enter judgment against the limited liability company.

On the other hand, if the trial court concluded defendant was personally liable for the return of plaintiff's rent and security deposit because a piercing of the corporate veil was justified, the record as it stands is insufficient to support that determination. The issue of piercing the corporate veil was not raised in a meaningful way by either party before the trial court. As a result, there is no evidence in the record with respect to PennBridge's assets, capitalization, or status as a shell entity. Defendant's admission, which he later attempted to withdraw, that he owned the subject property through his limited liability company, if true, does not, standing alone, justify piercing the corporate veil. We leave to the trial court's discretion whether to reopen the record to gather additional evidence with respect to piercing the corporate veil if that was the basis for entry of judgment against defendant.

We affirm the award of damages to plaintiff and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Any further appellate review must be sought in a new application to this court after conclusion of remand proceedings.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4671-18T2